UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | No. 22-cr-76-1 (KMM/TNL) |
| Plaintiffs, | |
| v. | **ORDER** |
| 1. Shevirio Kavirion Childs-Young, et al., | |
| Defendants. | |

In this criminal case, the government has charged Shevirio Kavirion Childs-Young and several co-defendants with one count of conspiring to use, carry and brandish firearms during and in relation to a crime of violence, as well as several individual counts of aiding and abetting robbery, aiding and abetting carjacking, and brandishing a firearm during and in relation to a crime of violence. [Superseding Indictment, Dkt. 34.] Mr. Childs-Young has moved to suppress eyewitness identification evidence and evidence obtained pursuant to several state search warrants. [Dkt. 89 (identification mot.); Dkt. 91–94 (warrant mots.).]

On November 8, 2022, United States Magistrate Judge Tony N. Leung held a hearing on the suppression motions. With respect to the witness identification motion, Judge Leung received the following evidence: (1) testimony from Minneapolis Police Sergeant David Ligneel; (2) an audio recording of Sergeant Ligneel's interview with an individual identified by the initials L.D.W., who identified Mr. Childs-Young from a photo lineup; and (3) a photo-lineup form as well as the photographs Sergeant Ligneel used during that identification procedure. [Dkt. 129-5 (photo lineup form and photos).] For the

1

motions concerning the search warrants, Judge Leung admitted into evidence the four search warrants and their respective applications. [Dkt. 108.] The first of the warrants authorized the search of a Minneapolis residence for individuals, firearms, and other evidence believed to be connected to a carjacking. The second authorized officers to obtain several months of cell phone records for a phone number associated with Mr. Childs-Young as part of an investigation into a series of robberies and carjackings. Third was a search warrant for records connected to a CashApp[1] account, which was linked to the cell phone mentioned above, and which officers believed had been used by the suspected carjackers and robbers to transfer funds from their victims to themselves. Finally, Mr. Childs-Young challenged a warrant authorizing law enforcement to obtain a sample for DNA analysis by means of a buccal swab or blood draw. [Dkt. 129-1, 129-2, 129-3, 129-4.] The Court refers to these, respectively, as the "residence warrant," the "cell phone warrant," the "CashApp warrant," and the "DNA warrant."

On January 26, 2023, Judge Leung issued a Report and Recommendation ("R&R") concluding that Mr. Childs-Young's suppression motions should be denied. [Dkt. 123.] In short, Judge Leung found that each of the search warrants was adequately supported by a showing of probable cause and the photo lineup procedure that Sergeant Ligneel used did not violate Mr. Childs-Young's constitutional rights. [*Id.*] Mr. Childs-Young objected to the R&R, and the government responded. [Dkt. 126 (Objection); Dkt. 129 (Response)]. For

---

[1] CashApp is a peer-to-peer mobile payment service used by consumers to transfer money to each other using mobile phones.

the reasons that follow, Mr. Childs-Young's objections are overruled, the R&R is accepted, and the motions to suppress are denied.

## I. Legal Standard

After an R&R is issued, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *United States v. Miller*, Crim. No. 20-232(19) (JRT/BRT), 2022 WL 3644894, at *2 (D. Minn. Aug. 24, 2022) (quoting *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008)). The Court reviews *de novo* those portions of the R & R to which specific objections are made, and it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b)(3).

## II. Search Warrants

Mr. Childs-Young argues that the R&R erred in concluding that the search warrants at issue in this case were supported by a proper showing of probable cause. [Dkt. 126 at 2–8.] When determining whether to issue a search warrant in the first instance, a judge makes a practical decision, based on the totality of the circumstances described in the officer's affidavit, about whether there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When another judge reviews that common-sense decision, she gives the issuing judge's probable cause determination "great deference." *United States v. Reed*, 25 F.4th 567, 569 (8th Cir.

2022). The reviewing court asks whether the issuing judge "had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 214. Applying these standards here, the Court overrules Mr. Childs-Young's objections, finds that the affidavits supporting the warrants provided a substantial basis for the issuing judges to find there was probable cause to issue them, and concludes that the R&R properly recommends denial of the motions to suppress.

As an initial matter, the Court notes that the motions concerning the warrants raised the issue of lack of probable cause and defense counsel requested a "four corners" review of each warrant at the hearing.[2] However, prior to filing the written objections to the R&R, the defense did not articulate *why or how* probable cause was allegedly lacking from any of the warrants. For example, the defense did not argue at the hearing regarding the flaws in the warrants, and made no argument in the post-hearing memorandum submitted to the Magistrate Judge. [*See* Dkt. 118.] In fact, the specific critique of each warrant appeared for the first time in Mr. Childs-Young's objections. Though perhasps not a waiver of the probable cause issue, this makes the Magistrate Judge's task in evaluating a motion to suppress based on an alleged lack of probable cause unnecessarily difficult. *Cf. United States v. Roberson-Romosz*, Crim. No. 08-235 (JRT/JJK), 2008 WL 5104292, at *3 (D. Minn. Nov. 26, 2008) (stating that "[t]he dilemma created by the lack of any argument illustrates why the umpire does not throw the pitch" where the defense did not articulate an argument in support of certain issues raised). Nonetheless, this Court has carefully

---

[2] Hr'g Tr. 10–12, Dkt. 113.

reviewed each warrant and Mr. Childs-Young's arguments and concludes that they were all supported by adequate probable cause.

*The Residence Warrant*

In his written objections to the R&R, Mr. Childs-Young asserts that the Magistrate Judge erred in finding that there was probable cause to support the residence warrant because the supporting affidavit did not connect the occupants of the vehicle to any description of the suspects who committed the carjacking. He further argues that the passage of time between the carjacking and the police encounter allows for the possibility that the occupants could have been persons other than the perpetrators of the crime. [Dkt. 126 at 3–4.] The Court disagrees.

The supporting affidavit for the residence warrant states that within just a couple of hours of a reported carjacking, the victim was able to track a cell phone believed to still be inside the vehicle. When police learned that information, they located the stolen car. When officers attempted to stop the vehicle, there was a pursuit, and its occupants fled into the residence. [Dkt. 129-4 at 1–2.] Mr. Childs-Young overlooks the incriminating inferences an issuing judge could permissibly draw from these circumstances, especially the occupants' flight into the residence. Given the deferential standard applicable here, this Court has little trouble finding that the issuing judge had a substantial basis to conclude there was a fair probability that a suspect, contraband, or evidence of the carjacking would be found in the residence. The objection is overruled.

5

*The Cell Phone Warrant*

Second, Mr. Childs-Young suggests that the R&R erred in finding that the cell phone warrant was supported by probable cause because the supporting affidavit focused on the conduct of other individuals, not Mr. Childs-Young, but inexplicably concluded that Mr. Childs-Young had been involved in several carjackings. He argues that the affidavit failed to connect the target cell phone number to any criminal activity and that the warrant authorized an overly broad seizure of data. [Dkt. 126 at 4–6.] These objections are overruled.

Undermining Mr. Childs-Young's arguments is the fact that the affidavit described how Mr. Childs-Young had been heard on a recorded jail call to the target cell phone from a co-defendant discussing a recent carjacking. [R&R at 17; Dkt. 129-3 at 5.] The affidavit also describes Mr. Childs-Young's connection to that cell phone and a related CashApp account that several carjacking victims had reported as the destination where money was sent from their own financial accounts. [Dkt. 129-3 at 5.] Given these and other details set forth in the affidavit, there was no error in the R&R concluding that the issuing judge had a substantial basis to find probable cause for the cell phone warrant.

Mr. Childs-Young's related complaint that the warrant allowed access to months of records when only a shorter duration was justified is similarly unpersuasive. The affidavit described a series of similar robberies taking place between July and October 2021. [*Id.* at 3.] The warrant rather straightforwardly tied the duration for which it authorized law enforcement to obtain data to the period when similar robberies were suspected to have been committed by the individuals connected to the target cell phone; consequently, there

6

was a substantial basis for the issuing judge to conclude that evidence of criminal activity would be located in phone records over that span of time.

### *The CashApp Warrant*[3]

Mr. Childs-Young contends that the CashApp warrant suffers from a "fatal defect" because it was issued for an account with the username "$BigTD045" when the body of the warrant application references an account named "$BigTDG045." Because the *warrant* authorized the search of an account without a "G" in the account name, but the *affidavit* referred to an account that included it, Mr. Childs-Young contends there was no probable cause to support a search of the account actually referenced in the CashApp warrant. [Dkt. 126 at 6–7.] Before the R&R was issued, the parties presented no argument on this issue. Judge Leung raised it on his own and reasonably found that the mistake was a typographical error. Based on that finding, the R&R concluded that the innocent mistake was insufficient to invalidate the warrant based on existing Eight Circuit precedent and that suppression would not be warranted based on the good-faith exception recognized in *United States v. Leon*, 468 U.S. 897, 920 (1984). [R&R at 19 n.2 (applying *United States v. Palega*, 556 F.3d 709, 714 (8th Cir. 2009) and *United States v. Saddler*, 19 F.4th 1035, 1040 (8th Cir. 2021) (quoting *Leon*)).]

Mr. Childs-Young articulates his objection to the R&R as follows:

---

[3] In addition to making a specific challenge to an error in the CashApp warrant, Mr. Childs-Young states that the application in support of that warrant fails to establish probable cause for the same reasons that the cell phone warrant fails. [Dkt. 126 at 6.] This objection is overruled for reasons discussed above.

7

> The missing letter "G" is more than just an easily-corrected oversight, such as the wrong address on a home where the description otherwise makes clear which location is at issue. This is a search of electronic evidence. The "place to be searched" is virtual: it is the digital information associated with the account "$BIGTD045." And the application contains almost *no* information about that account . . . .

[Dkt. 126 at 6.] To the extent Mr. Childs-Young contends that the R&R erred in finding that the mistake here was not an innocent or negligent typographical error, he has made no showing to support such an assertion. Moreover, Mr. Childs-Young does not cite any authority to support the proposition that because the place to be searched is a repository of electronic information, a small unintentional error in identifying the precise account name undermines a finding of probable cause.

In addition, even if Mr. Childs-Young were correct that there was an insufficient showing of probable cause here, the Court is not persuaded by his argument that probable cause was so obviously lacking that the *Leon* exception could not be applied. Mr. Childs-Young suggests that this case is like *United States v. Herron*, 215 F.3d 812 (8th Cir. 2000), but that case involved affidavits that failed to provide any basis to connect evidence of the suspected cultivation of marijuana to Mr. Herron's property; instead, it connected all criminal activity to a separate farm. *Id.* at 814. Here, the CashApp affidavit described a series of carjackings and robberies, connected those crimes to Mr. Childs-Young and two of his co-defendants, and linked the CashApp account to the transfer of money from the applications on the victims' stolen phones. [R&R at 19–21; Dkt. 129-2 at 3–5.] *Herron* had nothing to do with a typographical error in identifying the place to be searched. Unlike *Herron*, the CashApp warrant's affidavit is not lacking all indicia of probable cause so that

an officer's belief in its validity would be entirely unreasonable. 215 F.3d at 814–15. Accordingly, the Court overrules his objection to the Magistrate Judge's recommendation that his motion to suppress evidence obtained pursuant to the CashApp warrant be denied.

### *The DNA Warrant*

Mr. Childs-Young briefly objects to the R&R's conclusion that the DNA Warrant was based on an adequate showing of probable cause. He contends that the application contained only conclusory statements linking him to a robbery and carjacking ring and failed to connect him to the stolen vehicle discussed in the affidavit. [Dkt. 126 at 7.] The supporting affidavit for the DNA Warrant tracks details of the warrant applications discussed above. [*See* Dkt. 129-1.] For the same reasons the Court rejected the challenges to the R&R's probable-cause determinations as to the three previous warrants, the Court finds the issuing judge properly determined there was probable cause to issue the DNA warrant.

For all these reasons, Mr. Childs-Young's motions to suppress evidence seized pursuant to the search warrants discussed above are denied.

### III.   Identification Evidence

Mr. Childs-Young argues that his motion to suppress L.D.W.'s pretrial identification of him from a photo lineup should have been granted because the identification procedure used by Officer Ligneel violated his due process rights. [Dkt. 126–28.] The admissibility of identification evidence is governed by a two-part test. *United States v. Williams*, 340 F.3d 563, 567 (8th Cir. 2003). First, the Court determines if the identification procedures were impermissibly suggestive and unnecessary. *Perry v. New*

9

*Hampshire*, 565 U.S. 228, 238–39 (2012); *United States v. Omar*, 786 F.3d 1104, 1108 (8th Cir. 2015). If so, the Court next asks "whether the identification technique created a substantial likelihood of misidentification." *Omar*, 786 F.3d at 1108 (internal quotation marks omitted). This involves a case-by-case determination of the reliability of the identification based on the totality of the circumstances. *Perry*, 565 U.S. at 239.

> The factors affecting reliability include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

*Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2559 (2018) (per curiam) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Manson*, 432 U.S. at 113.

### *The R&R*

In the R&R, Judge Leung found that in September 2021, L.D.W. was working for a ride-share business as a driver and accepted a fare. When L.D.W. arrived at the meet-up location, no one was there to pick up for the ride. L.D.W. called the number for the person who ordered the ride and was told they would be right out. A short time later, a red vehicle pulled up next to L.D.W.'s vehicle. The driver of the red vehicle got out, pointed a handgun at L.D.W., hit L.D.W. in the head with the handgun, and demanded his cell phone, wallet, and the passcode for his cell phone. L.D.W. handed over his cell phone and fled on foot.

Law enforcement arrived on the scene minutes later, and L.D.W. provided a description of the driver of the red vehicle as a "Black male, 17 to 18, wearing a black

jacket" with "twists" in his hair. Mr. Childs-Young became a person of interest in the investigation around November 2021 because his fingerprint had been identified on the exterior driver's-side door handle of L.D.W.'s vehicle. At that point, Sergeant Ligneel decided to meet with L.D.W. to show him a photo-lineup. He used a computer program that included Mr. Childs-Young's most recent booking photo along with other individuals' booking photos, and sequentially arranged the images. The additional images were initially selected by the program because the people depicted had facial features like Mr. Childs-Young's. Sergeant Ligneel then went through the photo-lineup and swapped out some of the photos to generate a group that looked more like Mr. Childs-Young.

Sergeant Ligneel then interviewed L.D.W. in the presence of L.D.W.'s sister because L.D.W.'s native language was Somali and his sister could translate things for the officer if needed. L.D.W.'s sister "stepped in" at times during the interview to "facilitate the conversation," "particularly with respect to the instructions for the photo line-up procedure." Sergeant Ligneel told L.D.W. that he had found fingerprints on his car and asked L.D.W. to describe what happened.

When Sergeant Ligneel eventually showed L.D.W. the photo lineup he used a Minneapolis Police Department form. The Department's preference is for an independent administrator who is not involved in the investigation to conduct a photo lineup. However, Sergeant Ligneel did no do so. While administering the photo lineup, Sergeant Ligneel told L.D.W. that Sergeant Ligneel knew who the suspect is, but did not know the order of the photos L.D.W. was seeing. While going through the photos, L.D.W. pointed his finger at one photo and said "that is the one," identifying the person in the photo as the driver of the

11

red vehicle. Sergeant Ligneel asked L.D.W. to sign and date the photo and told him that if he "had more suspects, [he]'d show [L.D.W.] more pictures." He also asked L.D.W. how certain he was on a scale of 1 to 10, where 10 represented the most confident. L.D.W. said that he was 100% sure. The photo that L.D.W. selected was the photo of Mr. Childs-Young.

Judge Leung concluded that this was not an impermissibly suggestive procedure. First, looking at each of the images in the lineup, Judge Leung concluded that they did not reveal differences that made Mr. Childs-Young's photograph stand out. Second, Judge Leung rejected the argument that the procedure was suggestive because Sergeant Ligneel communicated several details to L.D.W., including: telling him he was the investigator; saying he had found a fingerprint; suggesting the suspect was involved in a series of robberies; and stating that law enforcement hoped to obtain an indictment. The R&R found these facts did not create a suggestive procedure, noting that Sergeant Ligneel not only told L.D.W. that the person who committed the crime may not be in the lineup, but also that L.D.W. did not need to make an identification.

Third, the R&R observed that there is no constitutional requirement that a lineup must be administered by someone not involved in the investigation. Fourth, although Judge Leung observed that it would have been a better practice for the officer not to have said that he knew who the suspect was, he explained that "it requires no logical leap to think that the average person presumes that one or more individuals presented in a line-up is considered by law enforcement to be a suspect in the investigation." And finally, the R&R reasoned that rather than Sergeant Ligneel's comments about having no other suspects to show him operating as an implication that L.D.W. had selected the right person, it was

12

"more indicative of them having reached the end of the sequential photo line-up than it is feedback on the accuracy of L.D.W.'s identification." Judge Leung found this conclusion bolstered by the fact that Sergeant Ligneel declined to answer L.D.W.'s sister's question about whether L.D.W. had, in fact, selected the right person.

*__Objections__*

Mr. Childs-Young takes issue with the fact that L.D.W. was a native Somali speaker and that the photo-lineup took place in February 2022, nearly five months after the September 2021 carjacking.[4] Mr. Childs-Young further argues that the procedures used by Sergeant Ligneel were impermissibly suggestive because he failed to follow Minneapolis Police Department photo-lineup protocol in several ways, including (1) introducing himself as the lead investigator, (2) explaining that fingerprints had been found, (3) referencing the officers' intentions to obtain an indictment for several individuals, and (4) making comments after the lineup was complete to indicate that L.D.W. had selected the right person from the set of images. [Dkt. 126 at 14.] Based on a *de novo* review of the

---

[4] Although Mr. Childs-Young emphasizes the passage of five months between the carjacking incident and the photo lineup procedure in various places in his objections to the R&R, he does not suggest that the procedure was impermissibly suggestive because of that delay. Rather, Mr. Childs-Young only argues that the passage of time undermines the reliability of L.D.W.'s identification. [Dkt. 126 at 14–15 ("[W]hile it may be true that L.D.W. expressed a high level of certainty in identifying Mr. Childs-Young as a suspect, it is also true that this protocol took place nearly half a year after the robbery occurred."). Because the Court concludes that the photo lineup procedure was not impermissibly suggestive, the Court need not consider its reliability. But nothing prevents the defense from calling a jury's attention to the significant passage of time between a witness encounter and an out-of-court identification as a means of questioning the witness's reliability.

evidence, the Court agrees with the R&R's conclusion that the identification procedures used by Sergeant Ligneel were not impermissibly suggestive and overrules Mr. Childs-Young's objections.

First, with respect to the objection concerning L.D.W.'s native language, Mr. Childs-Young has not persuaded the Court that Sergeant Ligneel's reliance on L.D.W.'s sister to act as a translator made the procedure impermissibly suggestive. He does not argue, for example, that Sergeant Ligneel somehow manipulated the absence of a formal translator or the presence of L.D.W.'s sister as a means of improperly communicating information to L.D.W. about which photograph he should select. The Court's review of the recording of the interview does not reveal anything impermissibly suggestive about Sergeant Ligneel's communication with L.D.W. and his sister. And the mere fact that Sergeant Ligneel was involved in the investigation does not mean that his administration of the photo-lineup was impermissibly suggestive. *United States v. Boston*, 494 F.3d 660, 666 (8th Cir. 2007) ("[T]here is no requirement that [photographic] lineups be administered by officers who are independent from the investigation.").

The Court also agrees with the R&R's conclusion that the differences in appearance among the images L.D.W. was shown did not highlight Mr. Childs-Young's photograph. The age range, skin tones, hair styles, facial hair, and clothing of the six individuals, though certainly not identical, were reasonably similar. [Dkt. 129-5 at 3–9.] The images themselves were similar in size and each was marked with only a single number. [*Id.*] As a result, the image of Mr. Childs-Young was in no way isolated for selection by the witness. *United States v. Whitewater*, 879 F.3d 289, 292 (8th Cir. 2018) ("When there are no

differences in appearance tending to isolate the accused's photograph, the lineup is not impermissibly suggestive.").

Further, it is especially noteworthy, and unhelpful to Mr. Childs-Young's position, that Sergeant Ligneel informed L.D.W. that he did not know the order of the photos, that the person who committed the crime may or may not be included in the photos he was going to show to L.D.W., and that L.D.W. did not have to make an identification of anyone in the images he was shown. *See United States v. Scott*, 831 F.3d 1027, 1033 (8th Cir. 2016) (finding photo-lineup procedures were not impermissibly suggestive where the officer used a program to generate the lineup and told the witnesses that the individual responsible for the carjacking might not be in the lineup).

Because the Court concludes that the photo-lineup was not impermissibly suggestive, it is unnecessary to address Mr. Childs-Young's argument that the identification procedure created a substantial likelihood of irreparable misidentification. *United States v. Gilbert*, 721 F.3d 1000, 1007 n.5 (8th Cir. 2013). Finally, the Court notes that because the details of the identification procedure are the subject of an audio recording and otherwise well-documented, Mr. Childs-Young can effectively challenge the reliability of L.D.W.'s identification at trial. *Cf. United States v. Rogers*, 73 F.3d 774, 778 (8th Cir. 1996) (finding no due process violation from the government's allegedly suggestive in-court identification procedures because defense counsel was able to cross-examine witnesses about the reliability and accuracy of the identifications based on the evidence in the record). In fact, some of Mr. Childs-Young's arguments about the photo

15

lineup process are better used in cross-examination of the witness than in support of suppression.

## IV. Order

IT IS HEREBY ORDERED that

1. The Report and Recommendation [Dkt. 123] is **ACCEPTED**.

2. Defendant's Motion to Suppress Eyewitness Identifications [Dkt. 89] is **DENIED**.

3. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (DNA Warrant) [Dkt. 91] is **DENIED**.

4. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Cash App Warrant) [Dkt. 92] is **DENIED**.

5. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Cell Phone Warrant) [Dkt. 93] is **DENIED**.

6. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (House Warrant) [Dkt. 94] is **DENIED**.

Date: April 10, 2023

                                                 *s/Katherine Menendez*
                                                 Katherine Menendez
                                                 United States District Judge